968 A.2d 1247 (2009)
407 N.J. Super. 30
In the Matter of Registrant, N.N.
Case Number: 03-130082
Superior Court of New Jersey, Law Division, Monmouth County.
Decided January 5, 2009.
*1248 John S. Furlong, West Trenton, for registrant N.N. (Furlong and Krasny, attorneys).
Laurie B. Gerhardt, Assistant Prosecutor, for the State of New Jersey (Luis A. Valentin, Monmouth County Prosecutor, attorney).
LAWSON, A.J.S.C.
This matter comes before the court by registrant, N.N., seeking a reduction in his Tier II Classification to Tier I, pursuant to N.J.S.A. 2C:7-2 to -11. The State does not oppose registrant's motion and has left the decision to the discretion of the court.
The court has reviewed the moving papers, engaged in colloquy with counsel and accordingly enters the following findings of facts and conclusions of law pursuant to R. 1:7-4.

I. FACTS
On May 3, 2002, registrant N.N. was arrested and charged with multiple counts of second degree sexual assault in violation of N.J.S.A. 2C:14-2(b), third degree endangering the welfare of a child in violation of N.J.S.A. 2C:24-4(a), fourth degree lewdness in violation of N.J.S.A. 2C:13-6, third degree burglary in violation of *1249 N.J.S.A. 2C:18-2, fourth degree theft of moving property in violation of N.J.S.A. 2C:20-3(a), and third degree attempted burglary in violation of N.J.S.A. 2C:18-2 and N.J.S.A. 2C:5-1. On July 11, 2003, registrant pled guilty to three counts of third degree endangering the welfare of a child and one count of third degree burglary. On November 14, 2003, registrant was sentenced to three years probation with specified conditions and community supervision for life. Registrant has completed his probation and maintains community supervision for life.
On June 10, 2004, the Monmouth County Prosecutor's Office served registrant with the Registrant Risk Assessment Scale and Manual Notification Letter and Application Form with notice to classify registrant as having a moderate risk of re-offense and to recommend he be classified as a Tier II offender. Because he was a Tier II offender, the State sought to notify schools and community organizations within a two (2) mile radius of registrant's residence. The State also sought to include notification on the sex offender Internet registry. Registrant filed a notice of objection. After the initial hearing, the court entered an order for continuance to permit the registrant to obtain a psychiatric report from Dr. Silverman. By order dated September 30, 2004, the court found, by clear and convincing evidence, that registrant had a Tier II moderate level risk of re-offense based upon the Registrant Risk Assessment Scale (RRAS) score of thirty-eight (38). Registrant was assessed a moderate risk, score of three (3) under Category 7, length of time since last offense, as registrant's last indicted offense occurred more than one year and less than five years from his assessment.
As of September 2008, six years have elapsed since registrant's last offense. Thus, registrant now. moves before this court seeking a reduction in his classification based on a "three-point" reduction in Category 7, length of time since last offense.

II. APPLICABLE LAW
When the Legislature passed the registration and community notification laws, commonly referred to as Megan's Law, it highlighted its concern about sex offenders in the statute by asserting that:
[t]he danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety.
[N.J.S.A. 2C:7-1.]
The Legislature charged the Attorney General with creating guidelines and a three-level system of notification to address this concern. N.J.S.A. 2C:7-8a. The Registration Risk Assessment Scale (RRAS) is the tool created by the Attorney General to help in the assessment of a registrant's tier. In re H.M., 343 N.J.Super. 219, 224, 778 A.2d 508 (App.Div.2001). Although the scale is a useful tool, "[i]t does not graduate to an irrebuttable presumption simply because it is properly and accurately computed." In re G.B., 147 N.J. 62, 80-81, 685 A.2d 1252 (1996). Instead, the Scale serves as "a guideline for the court to follow in conjunction with other relevant and reliable evidence in reaching an ultimate determination of the risk of reoffense posed by the registrant and the appropriate notification due the community." Ibid.
The Scale calculates the registrant's risk of recidivism by looking at four categories:

*1250 The first two categories, "Seriousness of Offense" and "Offense History," are considered static categories because they relate to the registrant's prior criminal conduct. The factors comprising "Seriousness of Offense" category include: degree of force, degree of contact, and age of victim. The factors comprising the "Offense History" category include: victim selection, number of offenses/victims, duration of offensive behavior, length of time since last offense, and history of anti-social acts. The remaining two categories, "Characteristics of Offender" and "Community Support" are considered to be dynamic categories, because they are evidenced by current conditions. The factors constituting the "Characteristics of Offender" category include response to treatment and substance abuse. The final category, "Community Support," measures the registrant's therapeutic support, residential support, and employment/educational stability.
[In re C.A, 146 N.J. 71, 103-04, 679 A.2d 1153 (1996).]
The difference between the "immutable static factors" and dynamic factors is that the dynamic factors address conditions and circumstances which may change over time, while the static factors remain constant, because they relate to the "nature and seriousness of the offense." In re H.M., supra, 343 N.J.Super. at 223, 778 A.2d 508 (citing In re C.A., 146 N.J. 71, 103, 679 A.2d 1153 (1996)).
Once the registrant is evaluated using the RRAS and is designated in a tier, the registrant has the right to challenge his tier classification at a hearing in Superior Court. In re G.B., supra, 147 N.J. at 69, 685 A.2d 1252; Doe v. Poritz, 142 N.J. 1, 30, 662 A.2d 367 (1995). Then it is the responsibility of the trial court to determine the proper scope of notification. In re G.B., supra, 147 N.J. at 69, 685 A2d 1252. There are only four situations which permit the trial court to reevaluate the initial designation of a registrant's tier. First, the trial court can reassess a registrant's notification requirements if the Appellate Division orders a reevaluation on remand. See In re H.M., supra, 343 N.J.Super. at 224, 778 A.2d 508. Second, according to N.J.S.A. 2C:7-2(f), a registrant can make an application to the Superior Court to have his notification requirements terminated if "the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others." Third, a juvenile registrant may also seek to terminate his notification requirements at age eighteen, if he was under age fourteen when he committed the offense, and the court "determines on the basis of clear and convincing evidence that the delinquent is not likely to pose a threat to the safety of others." In re J.G., 169 N.J. 304, 337, 777 A.2d 891 (2001). Finally, the Attorney General Guidelines recognize the need for re-evaluation when there is "evidence of a change in circumstances." In re H.M., supra, 343 N.J.Super. at 224, 778 A.2d 508.
Neither the Legislature nor the guidelines define "a change in circumstances." The courts, however, have limited re-evaluations based on "a change in circumstances" to situations where a registrant relocates or where a registrant changes employment. See id.; see also In re R.A., 395 N.J.Super. 565, 930 A.2d 438 (App.Div.2007). In In re H.M., supra, 343 N.J.Super. at 221-22, 778 A.2d 508, the registrant sought to have his tier classification reduced when he moved to a new county in the state. When the county refused to reevaluate the previous classification, the registrant appealed the case to *1251 the Appellate Division. Ibid. On appeal, the appellate court ruled that "whenever an application is made for an order of notification, whether an initial order or a subsequent order resulting from a change of the location of the registrant's residence or employment," the court must reevaluate the risk of recidivism by reassessing the dynamic factors under the RRAS. Id. at 224, 778 A.2d 508. Thus, a registrant is entitled to have the Superior Court reevaluate his tier designation when he relocates or changes employment by examining any changes in His dynamic factors. When the Superior Court is permitted to reconsider the initial order designating the registrant's level of notification, the court is only allowed to consider the dynamic factors under the RRAS and "any other relevant evidence, including ... the views of experts." Ibid. The Appellate Division in H.M. noted the significant changes in the registrant's dynamic factors from the time of his initial tier designation including his steady employment, his marriage and participation in sex therapy. On the other hand, static factors, "once adjudicated, should not be revisited absent appellate direction." Ibid. This is because "res judicata bars the reassessment made of the static criterion." In re R.A., 395 N.J.Super. 565, 569, 930 A.2d 438 (App.Div.2007). Because the length of time since last offense is considered a static factor, it cannot be used as the determinative factor in a reassessment of a registrant's tier. See In re H.M., supra, 343 N.J.Super. at 223, 778 A.2d 508; In re C.A, supra, 146 N.J. at 103-04, 679 A.2d 1153.
Registrant acknowledges that a reevaluation should take place when it can be demonstrated that a registrant's circumstances have materially changed, but in this case, the only change has been the amount of time since his last offense. Registrant has not alleged any changes from his initial evaluation with respect to the dynamic factors as he continues to live with his parents, continues to undergo therapy, and continues to work. Nevertheless, nowhere in the statute does the Legislature provide for a reevaluation of a tier designation based on the passage of time since the last offense, and the court will not usurp the role of the Legislature by granting registrant's motion.[1] In its October 20, 2008 Report on Implementation of Megan's Law, the Criminal Practice Division of the Administrative Office of the Courts emphasized the "tier will not change unless there has been a significant change in circumstances." In fact, registrant's proposed idea that a registrant's tier can be lowered by the simple passage of time defeats the purpose of Megan's Law, which is to protect the public by making them aware of the presence of sex offenders in the community. If there have been no significant changes relating to any of the registrant's dynamic factors, then the registrant's circumstances have not changed. Therefore, if the registrant cannot demonstrate significant changes in the dynamic factors, he is not entitled to a reduction of the tier.
Furthermore, registrant's application to reduce his tier does not fall under one of the four situations where the Superior Court is permitted to reevaluate an initial *1252 tier classification. The Appellate Division has not ordered the Superior Court to review his initial classification on remand. Additionally, registrant's motion does not constitute an application to terminate notice requirements under N.J.S.A 2C:7-2(f), because only six years have passed since his offense, "not fifteen. Moreover, registrant was not a juvenile under age fourteen when he committed his offense; therefore, he cannot move for the Superior Court to terminate his notice requirements in accordance with In re J.G., supra, 169 N.J. at 337, 777 A.2d 891. Finally, registrant's main contention is that he is entitled to have his tier designation reevaluated, because six years has passed since he committed an offense. However, his application for re-evaluation does not fall under the purview of the cases where the courts recognize the need for a reassessment based on "a change in circumstances." The case law has limited the trigger for a "change in circumstances" re-evaluation by the Superior Court to cases where the registrant relocates or changes employment. Thus, the court finds that registrant's tier designation cannot be reevaluated based on the passage of time since the commission of his last sex offense.

III. CONCLUSION
Based upon the aforementioned reasons, registrant's motion to reduce his tier II classification is hereby denied.
NOTES
[1] At oral argument, registrant notified the court that this motion for a reduction of tier classification was made in anticipation of the July 26, 2009, implementation date for the federal law, the Sex Offender Registration and Notification Act ("SORNA"), Title I of the Adam Walsh Child Protection and Safety Act of 2006, and the court should anticipate more motions of this nature. The SORNA Guidelines will apply to all past and present sex offenders, and will prevent the re-evaluation of their tier classification. The National Guidelines for Sex Offender Registration and Notification. 73 Fed.Reg. 38,030 (July 2, 2008).